United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Criminal Case No. 16-20828-CR-Scola |
| | ) | |
| Sam Bono, | ) | |
| Defendant. | ) | |

### **Order on Non-Party's Motion for Return of Seized Property**

This matter is before the Court on the Non-Party Movant Annette Llamas's ("Llamas") motion requesting return of property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. (ECF No. 28.) The United States of America ("Government") filed a response in opposition. (ECF No. 31.) In her reply, Llamas clarified her initial motion, noting that "the Court should equitably toll the deadline by one day" and consider timely filed her claim contesting the property seizure. (Reply at 1, ECF No. 32). After reviewing the motion, the response, the reply, the record, and legal authority, the Court **grants in part and denies in part** Llamas's motion **(ECF No. 28)**.

This dispute arises from the Drug Enforcement Agency's ("DEA") denial of Llamas's claim contesting forfeiture of property under 18 U.S.C. § 983(a)(2), which the DEA received one day after the statutory deadline. (Mot. at 2, ECF No. 28; Mot. Ex. F, ECF No. 28-6; Resp. Ex. A, Decl. of Vicki Rashid ¶ 4(l), ECF No. 31-1.) The DEA seized the property in question on October 14, 2016, from Llamas's apartment. (Mot. at 1, ECF No. 28.) Llamas shared that apartment with Sam Bono, her brother and the defendant in the underlying criminal case. (*Id.*) The DEA found nine kilograms of cocaine in Bono's closet. (Mot. Ex. A, ECF No. 28-1.) They also found nineteen items of jewelry for both men and women, valued at $41,130.00. (Mot. Ex. B, Ex. D, ECF No. 28-2, 28-4; Resp. at 2, ECF No. 31.) Llamas claims the jewelry belongs to her and the DEA seized it "without any evidence whatsoever that any of the items were bought with drug proceeds." (Mot. at 1, ECF No. 28.)

On December 6, 2016, the DEA sent Llamas a notice of seizure with instructions for contesting the forfeiture of the jewelry. (Mot. Ex. B, ECF No. 28-2.) The notice indicated she had thirty-five days from the date of the letter,

pursuant to 18 U.S.C. § 983(a)(2), to file a claim for the return of her property. In other words, the notice required Llamas to file her claim no later than January 10, 2017. The notice further advised Llamas that the "claim is deemed filed on the date received by the agency." (*Id.*)

On January 7, 2017, Llamas mailed a claim via the United States Postal Service ("USPS") certified mail. (Mot. Ex. C, ECF No. 28-3.) She paid for two-day priority mail with an expected delivery date of January 9, 2017—the day before the deadline. (*Id.*) The DEA, however, received the claim on January 11, 2017—the day after the deadline. (Resp. at 2, ECF No. 31.) On March 8, 2017, the DEA informed Llamas that the claim was "being returned because it was received in this office after the last date to file." (Mot. Ex. D, ECF No. 28-4.) (emphasis omitted).

Llamas argues the Court should equitably toll the deadline for filing and find Llamas's claim timely filed. (Reply at 1, ECF No. 32.) Llamas further argues the Court should "refer the seizure" for "filing of a judicial forfeiture action" pursuant to the procedures outlined in 18 U.S.C. § 983(a)(3)(A). (*Id.*) The Government opposes these requests because "Llamas had options regarding the delivery of the claim." (Resp. at 5, ECF No. 31.)

Courts have the discretion to equitably toll a statutory deadline. *See United States v. 2014 Mercedes-Benz GL350BLT, VIN: 4JGDF2EE1EA411100*, 162 F. Supp. 3d 1205, 1214 (M.D. Ala. 2016) ("[B]ecause the statute is procedural, rather than jurisdictional, it is within the court's discretionary authority to toll the statute."). "[A]bsent Congressional intent to the contrary, principles of equitable tolling are read into every federal statute of limitation." *United States v. Capote*, 159 F. App'x 108, 112 (11th Cir. 2005). However, equitable tolling only applies if the party "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quotations marks omitted). "The diligence required for equitable tolling purposes is reasonable diligence." *Id.* at 2565. Courts consider whether to equitably toll a deadline "on a case-by-case basis if specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *2014 Mercedes-Benz GL350BLT*, 162 F. Supp. 3d at 1214 (quotations omitted). All the same, "[e]quitable tolling is an extraordinary remedy that is typically applied sparingly." *Wade v. Battle*, 379 F.3d 1254, 1265 (11th Cir. 2004).

When an attorney waits until the "last-minute" before the deadline to mail a claim and the common carrier fails to deliver the claim on time, the late

delivery is caused by "lack of due diligence," not "the result of extraordinary circumstances." *Ward v. Astrue*, No. 5:09cv380/RS/EMT, 2010 WL 4386544, at *5 (N.D. Fla. Oct. 29, 2010); *see also Pantoja v. Colvin*, No. 8:15-cv-1414-T-23MCR, 2015 WL 9703801, at *3 (M.D. Fla. Dec. 3, 2015) (finding that USPS's late delivery of a complaint package, sent the day before a deadline, was "not an extraordinary circumstance warranting equitable tolling."). To exercise diligence, a party might pursue alternative options to "ensure timely delivery of a claim," such as (1) electronic filing, (2) private delivery, or (3) mailing the item at an earlier date. *Ward*, 2010 WL 4386544, at *6. (emphasis omitted). In *Ward* and *Pantoja*, there was no room for error—any delay on the part of USPS would necessarily result in an untimely filing. The plaintiff in *Ward* waited until two days before the deadline to mail her complaint and sent it through USPS Express with a scheduled arrival "late in the afternoon on the last day for filing." *Ward,* 2010 WL 4386544, at *2, 6. Similarly in *Pantoja*, the plaintiff "mailed the complaint package by dropping it off in the USPS express mailbox on June 11, 2015, the day before Plaintiff's filing deadline." *Pantoja*, 2015 WL 9703801, at *3.

Llamas's situation is distinguishable from *Ward* and *Pantoja* because Llamas did not wait until the "last-minute" to mail the claim and the expected delivery date for Llamas's claim was not the day of the deadline. In contrast, Llamas diligently pursued a timely delivery, mailing the package three days before the deadline and paying for an expected delivery one day early, a comfortable time frame with room for the possibility of a delay. Certainly, Llamas did not pursue the alternative options discussed in *Ward*. However, these options were either impossible or seemingly unnecessary given the situation.

First, Llamas could not pursue the first option of electronic filing. The DEA required Llamas to mail a written claim to contest the forfeiture, not allowing electronic filing in this circumstance. (Mot. Ex. B, ECF No. 28-2.) Second, private delivery would not result necessarily in a more reliable delivery. In a statement from 2014, USPS highlighted an independent study examining the differences between USPS Priority Mail, UPS Ground, and FedEx Home Delivery. *FY2014 Comprehensive Statement on Postal Operations, in* United States Postal Service 2014 Annual Report to Congress, http://about.usps.com/publications/annual-report-comprehensive-statement-2014/ar2014/annualreport2014_tech_048.htm. The deliveries observed in the study indicated USPS Priority Mail outpaced the delivery times of the private deliverers. *Id.* Based on the information presented by USPS, Llamas could

reasonably expect a timely delivery on a mailing from Florida to Virginia. In addition, choosing a private deliverer nevertheless might result in relying on USPS because increasingly USPS and private deliverers overlap and cooperate.[1]

Finally, Llamas could have pursued the third option of mailing the claim earlier to ensure a timely arrival, but she had no reason to expect the mailing would arrive late. Late delivery occurs at times, but Llamas did not wait until the "last-minute." She mailed the claim three days before the deadline and left a buffer of a day for arrival to ensure timely delivery, even accounting for a possible delay. (Mot. Ex. C, ECF No. 28-3.) In addition, there is no indication that Llamas could have prepared a proper response any earlier, given the short turn-around-time and the time of year during which these events occurred.

The Court finds that Llamas diligently attempted to file the claim on time, but the extraordinary circumstance of USPS's delay prevented timely filing. Thus, the Court equitably tolls the deadline for contesting the seizure. This narrow decision merely provides Llamas, who is not a defendant nor charged with any wrongdoing in this case, to contest under § 983 whether she rightfully owns the property. She should not be denied this opportunity based on a technicality caused by extraordinary circumstances.

As a result, the Court finds that Llamas's claim was timely filed. The Court will not consider the merits of whether Llamas is entitled to the jewelry seized under 41(g). Instead, Llamas may avail herself by the procedures of § 983.

Accordingly, the Court **grants in part** the motion (**ECF No. 28**) only with respect to the equitable tolling of the statutory deadline. However, the Court **denies in part** the motion (**ECF No. 28**) with respect to the request for the return of seized property. The Government must file a complaint for forfeiture no later than **September 27, 2017**, pursuant to the relevant provisions in § 983.

**Done and Ordered** in Chambers at Miami, Florida, on June 30, 2017.

_____
Robert N. Scola, Jr.
United States District Judge

---

[1] The Wall Street Journal reported in 2014 that "UPS and FedEx rely on the postal office for the back-end of their cheaper two- to seven-day delivery options." Laura Stevens, *For FedEx and UPS, a Cheaper Route: the Post Office*, WALL STREET JOURNAL, Aug. 4, 2014, https://www.wsj.com/articles/u-s-mail-does-the-trick-for-fedex-ups-1407182247. The article further indicates USPS delivers "about 30% of [FedEx's] total U.S. ground segment," while USPS handled "about 37 million packages" for UPS's "ground shipments in 2012." *Id.*